Jacqueline LATTA, Appellant (Petitioner Below),

v.

STATE of Indiana, Appellee (Respondent Below).

No. 46S03–0004–PC–236.

Supreme Court of Indiana.

March 16, 2001.

Susan K. Carpenter, Public Defender of Indiana, Hope Fey, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

In 1990, Jacqueline Latta was convicted of the felony murder of her two-year-old son Brad Latta and sentenced to fifty years imprisonment. She sought postconviction relief on the ground that she was denied effective assistance of counsel. She and her husband, Roger Latta, were tried jointly and were represented by the same counsel. Latta's claim of ineffective assistance of counsel included the contention that this joint representation created an impermissible conflict that adversely affected her defense. The postconviction court rejected this contention, but on appeal the Court of Appeals agreed and granted relief in the form of a new trial.

Joint representation is not inherently impermissible. Latta consented to the joint representation after it was challenged by the State at her trial. The principal issues raised by the joint representation were whether her consent was knowing and intelligent and, if so, whether a conflict created by joint counsel can nevertheless be so severe that a defendant's Sixth Amendment right to effective counsel requires a retrial. We have no findings by the postconviction court on either point. The latter remains an open question under the Sixth Amendment. We do not resolve the issues raised by joint representation because we find ineffective assistance of counsel on other grounds and agree that a new trial is required. However, we include a discussion of the problem of joint representation in the hope that it is helpful to trial courts facing this difficult issue.

### Factual and Procedural Background

During the night of February 14, 1989, Latta and her husband Roger escaped with minor injuries when their house burned with their two-year-old son Brad still inside. The Lattas were questioned two days later. Roger told the police that he had tried to retrieve Brad from his bed on four separate occasions. This seemed inconsistent with the absence of any burns on Roger's legs or feet. After extensive questioning, Latta implied that she had some involvement in setting the fire. Latta and Roger were charged with felony murder in May 1989.

Earl Studtmann was retained by Latta and Roger. After he unsuccessfully moved for separate trials, he represented both in their joint trial. The defense was essentially that the fire was accidental and had started in the attic as a result of faulty wiring. The State presented evidence that an accelerant was found near the front door of the Lattas' home. A mostly empty charcoal lighter fluid container was found in the kitchen. An arson investigator testified that the burn patterns on the floors of the kitchen, living room, and Brad's room also indicated the use of an accelerant. Latta and Roger were convicted of

murder and both were sentenced to fifty years imprisonment.

On direct appeal, the Court of Appeals concluded, among other things, that (1) a motion to suppress pretrial statements from both Lattas was properly denied; and (2) the trial court did not abuse its discretion in ruling inadmissible pictures of the Lattas' attic. *Latta v. State,* 581 N.E.2d 470 (Ind.Ct.App.1991) (mem.). Latta then filed a petition for postconviction relief, asserting the above claims, ineffective assistance of counsel, and newly-discovered evidence. The postconviction court denied relief, but the Court of Appeals reversed the denial of postconviction relief and ordered a new trial. The Court of Appeals held that Latta was denied effective assistance of counsel by reason of Studtmann's actual conflict of interest in representing both Latta and Roger. *Latta v. State,* 722 N.E.2d 389, 392 (Ind.Ct. App.2000). The court then concluded that Latta had demonstrated that an actual conflict of interest existed, that this conflict had adversely affected her representation, and that the representation resulted in actual prejudice. The court held that Latta had waived the issue by failing to object to joint representation at trial. Nevertheless, the Court of Appeals held that permitting the joint representation constituted fundamental error and ordered a retrial.

### Standard of Review

 In postconviction proceedings, the petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind.Post Conviction Rule 1(5). On appeal from a negative judgment, to the extent this appeal turns on factual issues, the defendant must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court. *Trueblood v. State,* 715 N.E.2d 1242, 1248 (Ind.1999) (citing *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995)).

### I. Ineffective Assistance of Counsel, Apart from Issues of Joint Representation

 The Sixth Amendment to the United States Constitution guarantees the defendant the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance, the defendant must prove that: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Latta maintains that she was prejudiced by the introduction into evidence of Roger's unredacted pre-arrest interview in which Roger was asked and, on counsel's objection that "answering it might tend to incriminate," refused to answer questions such as "Did Jackie set the fire?" She also points to Studtmann's closing argument, in which he referred to the possibility that Roger was innocent but covering up for Latta: "Now, then, if we would assume for argument's sake that Roger was trying to protect Jackie, again, just for argument's sake, just assume that, does that make him guilty of anything other than perhaps making a false statement to police. That is not arson murder."

Although the Court of Appeals found fundamental error in permitting the joint representation of both Lattas, we believe this case presents a more conventional claim of ineffective assistance of counsel independent of the issues raised by joint representation.

### A. Admission of Interviews

Latta argues that her rights were violated when the unredacted pre-arrest interview of Roger was admitted at trial. This

is claimed to have been the product of ineffective counsel and is also presented as a *Bruton* violation. In *Bruton v. United States*, the Supreme Court held that admission of one defendant's confession inculpating another defendant in a joint trial violated the other defendant's right to confrontation, even if the jury was instructed to ignore the statement. 391 U.S. 123, 136–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■■■■ This presents an unusual *Bruton* claim. *Bruton* is grounded in the right to confront witnesses, which includes the defendant's right to cross-examine adverse witnesses. *Pointer v. Texas*, 380 U.S. 400, 406–07, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). *Bruton* reasoned that an inculpatory statement by one defendant may be admissible against that defendant under the rules of evidence. Because that defendant cannot be compelled to testify, the other defendant's right of cross-examination is violated by introduction of the statement. In this case, Roger did not testify and Latta had no opportunity to cross-examine him. However, it is not Roger's testimony, but rather his silence and their joint counsel's objections to which Latta objects. Roger never admitted to any involvement in or knowledge of the fire, but he failed to answer several questions after Studtmann objected that the question called for an "incriminating" response. Latta argues persuasively that the effect is the same as if the court had admitted inculpatory answers from Roger, which would plainly be a *Bruton* violation. We agree that admission of Roger's statements violated Latta's right to cross-examine unless Roger testified at trial, which he did not. The questions to Roger and counsel's objections bore directly on Latta's guilt or innocence and Latta had no opportunity to cross-examine Roger to attempt to establish that his silence was based on circumstances that do not inculpate her. Latta urges that this silence was taken by the interrogator as a refusal to answer. Because of counsel's description of the

question as "incriminating," the jury may well have perceived it as inculpatory of either Roger or both Lattas. However, this was an issue available on the record and not presented on direct appeal. Accordingly, as a direct *Bruton* violation, it was waived. *See Trueblood v. State*, 715 N.E.2d 1242, 1248 (Ind.1999) (issues known and available but not raised on direct appeal are waived for postconviction proceedings).

■■■■ Although a *Bruton* claim was waived, we think counsel's failure to object to an unredacted transcript including objections and unanswered questions from Roger's pre-arrest interview is compelling evidence of ineffective assistance of counsel. Latta's pre-arrest interview also contains the same objections of counsel. The postconviction court accepted as "strategic" Studtmann's testimony that he concluded that it was preferable to give the jury a transcript with these statements rather than one with portions erased. We cannot understand this contention. It is difficult to see how a properly redacted transcript of the interview would have been harmful to Latta, particularly because the transcript appears to have been prepared on a dot matrix printer and was therefore presumably easily editable on a computer leaving no trace of omissions. This "strategy" backfired when, in its closing argument, the State referred to Latta's refusal to answer. In short, the postconviction court's conclusion that this was trial strategy seems indefensible.

**B.** *Closing Argument*

■■■■ Latta maintains that Studtmann's representation of her was ineffective when he asked the jury to assume, "for argument's sake, that Roger was trying to protect Jackie." Instead of bolstering the common defense of accident, Studtmann in effect offered the alternative theory to the jury that Latta was the principal offender and Roger merely a devoted, albeit misguided, spouse. The postconviction court concluded that, because Roger and Latta

"were inquired as to their joint representation by Mr. Studtmann and the court . . . there was no actual conflict that had an adverse affect [sic] on Mr. Studtmann's performance or that she was prejudiced in any way."

## C. *Prejudice from Counsel's Errors*

Because counsel's performance was deemed adequate, there was no finding by the postconviction court on the prejudice, if any, resulting from the failure to redact the statements, the failure to raise a *Bruton* objection, or the suggestion of apparently inconsistent defenses. Each of these appears potentially harmful to the defense, but only the last of the three seems directly related to joint defense as opposed to inadequate performance whether or not the two defendants had common counsel.

■ Under the standard set forth in *Strickland*, Latta has demonstrated that Studtmann's performance fell below prevailing norms, and there is a reasonable probability that, with effective representation, the result of the proceeding would have been different. The jury was confronted with numerous objections by Latta's own counsel intimating that she was directly involved in Brad's death and that it was not accidental. Given the other issues mentioned in Part III, we are satisfied that there is a "reasonable probability" that Latta would have been acquitted in this circumstantial case if she had been properly represented. We agree with the Court of Appeals that the postconviction court was clearly erroneous in finding that Studtmann's representation met acceptable performance standards. For the reasons explained in Part II, however, we do not agree with the court that joint representation is inherently a Sixth Amendment violation.

## II. The Problem of Joint Representation of Both Defendants

■ Latta asserts that she received ineffective assistance by reason of Studt-

mann's joint representation of Roger and her. She contends that the joint representation created an impermissible conflict and resulted in actual prejudice to her at trial. In order to succeed on an ineffectiveness claim based on an actual conflict of interest, a defendant who does not object to joint representation "at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Strickland* added, without much explanation, that, once a defendant has demonstrated an actual conflict and an adverse effect on his lawyer's performance, the prejudice prong of an ineffective assistance claim is presumed. 466 U.S. at 692, 104 S.Ct. 2052. In addition to the right to effective counsel, the Sixth Amendment also gives an accused the broad, if not wholly unrestricted, right to select counsel. This case presented the trial court with the tension between these two co-existing rights.

## A. *Right to Counsel of One's Choice*

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment right to counsel encompasses a right to counsel of one's choice. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Thus, joint representation is not a per se violation of the constitutional guarantee of effective assistance of counsel. *Hanna v. State*, 714 N.E.2d 1162, 1166 (Ind.Ct.App.1999) (citing *Holloway v. Arkansas*, 435 U.S. 475, 482–83, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Moreover, it is clear that under some circumstances a defendant may properly waive the right to conflict-free representation, *Ward v. State*, 447 N.E.2d 1169, 1170–71 (Ind.Ct.App. 1983) (citing *Holloway*, 435 U.S. at 483 n. 5, 98 S.Ct. 1173), and the courts recognize that a defendant may benefit from joint representation: "A common defense often

gives strength against a common attack," *Holloway*, 435 U.S. at 482–83, 98 S.Ct. 1173 (quoting *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

A challenge to joint representation of criminal defendants is often presented by the State and opposed by the defendants. That is what occurred in the Lattas' trial. Midway through the joint trial, the State moved for a mistrial, arguing, among other things, that the testimony of a trooper had given rise to a conflict of interest. The trooper testified that Latta had admitted to setting the fire and the State contended this implicated her more than Roger. Studtmann told the court it was the Lattas' choice for him to continue representing them. The trial court followed up by questioning Latta and Roger regarding joint representation:

> THE COURT: Mr. Latta, could I ask you a couple of questions?
>
> MR. LATTA: Yes, Your Honor.
>
> THE COURT: Did you and Mr. Studtmann talk about representation of both you and your wife, Mrs. Latta?
>
> MR. LATTA: Yes, sir. He said if there's no conflict—what is that—
>
> THE COURT: Of interest?
>
> MR. LATTA: —interest, there would be no problem in him representing both of us.
>
> THE COURT: All right. Mrs. Latta are you of the—do you have the same answers to those questions?
>
> MRS. LATTA: Yes, I do.
>
> THE COURT: In your discussions, did you talk about any risk that could be involved in joint representation?
>
> MRS. LATTA: Yes, we did.
>
> THE COURT: Okay. And I understand from Mr. Studtmann that both of you want him to represent you?
>
> MRS. LATTA: Yes, that's correct.
>
> MR. LATTA: Yes.

> THE COURT: As both of you—both of you want him to represent you as your attorney?
>
> MR. LATTA: Yes.
>
> THE COURT: Is that true, Mr. Latta?
>
> MR. LATTA: Yes.
>
> THE COURT: And is that true, Mrs. Latta?
>
> MRS. LATTA: Yes.

The trial court denied the State's motion. As the United States Supreme Court pointed out in *Wheat v. United States*, 486 U.S. 153, 159–62, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), this situation presents the trial court with a direct conflict between the defendant's claim to counsel of her choice and the risk that either a direct appeal or a postconviction court will find the joint counsel to have been ineffective despite the defendants' insistence on joint representation at trial. This difficulty is illustrated by a comparison of *Hanna* with the Court of Appeals' decision in Latta's case. In *Hanna*, as here, the State moved to disqualify defense counsel jointly retained by five co-defendants. The defendants had been advised of the risks of joint representation by defense counsel, a magistrate, and independent counsel, but voluntarily and knowingly waived the conflict of interest. The trial court nevertheless granted the State's motion to disqualify counsel. 714 N.E.2d at 1164. The Court of Appeals reversed, holding that the trial court abused its discretion in granting the motion because the State had not established a conflict sufficient to override the defendant's choice of counsel. *Hanna*, 714 N.E.2d at 1168. Thus, in *Hanna*, the Court of Appeals reversed because the trial court granted the State's motion to disqualify counsel, and Latta's conviction was reversed because the trial court denied the State's motion.

### B. *The Effect of the Defendant's Consent to Joint Representation*

█ Relying on *Hanna*, the Court of Appeals concluded that Latta had not

waived her right to object to joint representation because the trial court had not sufficiently performed its duty of ensuring Latta's right to a fair trial in accordance with the Sixth Amendment right to counsel. *Latta,* 722 N.E.2d at 393 n. 3. The Court of Appeals resolved the issue principally in terms of waiver. However, *Hanna* also noted that the court has an independent interest in ensuring a fair trial and may, in some circumstances, properly refuse a defendant's waiver of his right to conflict-free representation. 714 N.E.2d at 1164–65 (quoting *Wheat,* 486 U.S. at 162, 108 S.Ct. 1692 (" '[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented.' ")). As *Wheat* noted, this is true of both an "actual" and a "serious potential for" conflict. 486 U.S. at 164, 108 S.Ct. 1692.

 Even if we were to conclude that Latta's waiver of Studtmann's conflict was knowing and voluntary, the issue remains whether her initial waiver may serve to waive all future conflicts and any ineffective assistance of counsel claim based on these conflicts. Justice Marshall, concurring and dissenting in *Cuyler,* thought it impossible to waive all potential conflicts, especially where a waiver is obtained in the early stages of trial before it is feasible to contemplate all of the possible conflicts. 446 U.S. at 354 n. 1, 100 S.Ct. 1708. But the United States Supreme Court has given us no further clear guidance on this point. *Hanna* observed that the State has an independent interest in a fair trial, 714 N.E.2d at 1164–65, but that cannot override the defendant's right to proceed pro se, which is surely also a hazardous choice. *Sherwood v. State,* 717 N.E.2d 131, 137 (Ind.1999) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). *Wheat* also cited the "institutional interest" in a fair proceeding. Arguably the proper inference from *Wheat* is that this institutional interest justifies overriding the defendant's

choice of joint counsel but still permits a waiver to preclude a later claim of ineffective assistance. *Wheat* itself expressly reserved this issue for another day, as it noted, "without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." 486 U.S. at 161–62, 108 S.Ct. 1692.

The post-*Wheat* federal circuit decisions have split on the question of whether a waiver eliminates further claims based on conflict. *Compare United States v. Hall,* 200 F.3d 962, 965–67 (6th Cir.2000) (reversing conviction on direct appeal because of ineffective assistance of counsel due to conflict of interest even though the trial court had repeatedly warned defendant of conflict, and stating that the defendant's waiver "does not bind the courts"), *and United States v. Swartz,* 975 F.2d 1042, 1049 (4th Cir.1992) (a waiver obtained pursuant to Federal Rule of Criminal Procedure 44(c), which places a duty on the trial court to inform defendant of potential conflicts where defendant is jointly represented, "may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings"), *with United States v. Lowry,* 971 F.2d 55, 63–64 (7th Cir.1992) (any ineffective assistance claim based on conflict of interest is barred where defendant knowingly and voluntarily waives conflict).

### C. The Issue for the Trial Court

 In *Wheat,* the five-Justice majority reaffirmed the well established presumption in favor of counsel of defendant's choice. 486 U.S. at 164, 108 S.Ct. 1692. The United States Supreme Court nevertheless affirmed the trial court's grant of the prosecution's motion to disqualify joint counsel, and held the trial court should be given wide discretion in this area. *Id.* at 162–63, 108 S.Ct. 1692. Justice Stevens, joined by Justice Blackmun in dissent, agreed that the trial court should be given wide discretion, but found that discretion

abused by a grant of the government's effort to deny the defense joint counsel of their choice. *Id.* at 173, 108 S.Ct. 1692. Thus, although seven Justices differed in outcome on the facts in *Wheat,* there was broad agreement that the trial court must be given latitude in its efforts to navigate the Scylla and Charybdis posed by the conflicting Sixth Amendment rights to counsel of one's choice and to competent counsel. We conclude that trial court discretion is necessary because of the tension between these two important rights that must be resolved by the trial court at a time when all relevant information is typically unavailable due to both attorney-client confidences and reluctance to expose trial strategies in advance.

It does not follow, however, that because a trial judge may properly refuse a waiver even if the waiver is knowing and voluntary, a trial judge must do so. Although a fair trial is the ultimate goal, we believe an important step in evaluating whether the actual conflict or serious potential for conflict is sufficient to override the defendant's express choice of counsel is an assessment of the defendant's apprehension of the dangers of joint representation. Even if the defendant's consent to joint representation is ultimately determined to preclude a subsequent claim of ineffective assistance grounded in conflict, trial courts should still make appropriate inquiry. And, regardless of the ultimate resolution of the issue left open in *Wheat,* we think the presumption of deference to the defendant's choice is strengthened by confidence that it is an informed and individual choice by the defendant. Thus, the trial court should attempt to discern "whether the defendant knew enough to make the choice an informed one—a rational reconciliation of risks and gains that are in the main understood." *United States v. Roth,* 860 F.2d 1382, 1387–88 (7th Cir.1988).

Although we resolve this appeal on grounds unrelated to the joint representation, because the issue was addressed by the Court of Appeals, we do so as well. In this case, the trial court's questioning was quite brief. It established in conclusory terms that Latta had been informed of the risks associated with joint representation and that she wished for Studtmann to represent her, but did not develop any record as to what her understanding of those risks was. At the postconviction hearing, Studtmann testified that he had explained the risks of joint representation to the Lattas "rather at length," and discussed the idea of separate counsel with them at the time he moved for separate trials. A trial court may be hard pressed to know how much questioning is enough to establish a knowing and voluntary waiver of a defendant's right to conflict-free representation. *Id.* at 1387 ("It is ... always possible to say that the judge could have mentioned one more thing."). Frequently the initiative to terminate joint representation before or at trial comes from the prosecution, not from a disgruntled defendant or from the court on its own motion. The reasons for this are typically tactical. A splintered defense is more likely to produce a plea agreement with weaker links in the defense chain and may ultimately produce that result as to all if some defendants become potential witnesses for the State. Evaluation of the degree of understanding of the risk of joint representation is made more difficult for the trial court because it cannot explore each defendant's understanding of the pros and cons of this arrangement in detail without intruding on both client confidences and the attorney's work product.

Here we have only the conclusory testimony at trial that the Lattas discussed the risks, and their attorney's testimony in the postconviction proceeding that this was done "rather at length." Accepting Latta's waiver is consistent with the recognition that the Sixth Amendment provides not only the right to counsel, but the right to counsel of one's choice. Indeed, four Justices in *Wheat* took the view that accepting the waiver and allowing joint rep-

resentation was constitutionally required under the circumstances of that case. 486 U.S. at 165–66, 108 S.Ct. 1692 (Marshall, J., joined by Brennan, J., dissenting); 486 U.S. at 172–73, 108 S.Ct. 1692 (Stevens, J., joined by Blackmun, J., dissenting). Although not an absolute right, the right to counsel of one's choice is not one with which courts should be eager to interfere: "Lawyers are not fungible, and often the most important decision a defendant makes in shaping his defense is the selection of an attorney. In situations where a defendant is able to retain counsel privately, 'the choice of counsel rests in his hands, not in the hands of the state.'" *Hanna*, 714 N.E.2d at 1165–66 (citations omitted). A defendant's exercise of the Sixth Amendment right to control the choice of counsel may ultimately prove disastrous. Nevertheless, we have recently held in another context that unwarranted interference with that Sixth Amendment right may, as in *Hanna*, require reversal. *See Sherwood*, 717 N.E.2d at 132 (imposing hybrid representation on a defendant who waives his right to counsel and chooses instead to exercise his right to represent himself violates the Sixth Amendment).

### D. The Issue in Postconviction Proceedings

■ The first issue for the postconviction court was whether, under these circumstances, it was within the trial court's discretion to accept Latta's waiver of conflict-free representation. We think the defendant's waiver should be presumed valid, and the burden in postconviction proceedings is on the defendant to prove otherwise. If there is evidence supporting the conclusion of an uninformed, or worse, improperly influenced waiver, the postconviction court must assess the defendant's appreciation of the risks. If knowing and voluntary, the waiver is at least entitled to a very strong presumption of validity, and may be conclusive, because it invokes her right to counsel of her choice. If the waiver does not preclude a subsequent claim of ineffective assistance,

there remains the issue, as *Cuyler* put it, of whether "an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler*, 446 U.S. at 348–49, 100 S.Ct. 1708. If so, prejudice under *Strickland* is presumed.

The trial court's investigation of the level of Latta's understanding of these risks was cursory at best. The postconviction court made no finding as to that understanding. Because we find Latta's counsel to have been ineffective irrespective of these issues, we need not resolve them on appeal. However, we caution trial courts in similar circumstances that it is prudent at least to inquire in greater detail as to the defendant's understanding of potential areas of conflict. Here, these included the risk that defenses may not be fully aligned, and that evidence exculpatory of one may be inculpatory of another.

### E. Ineffective Assistance and Fundamental Error

■ The Court of Appeals, despite finding Latta's waiver to be based on an incomplete probing by the trial court, held that the failure to object waived the issue on appeal. Notwithstanding that waiver, the Court of Appeals concluded that the proceedings in the trial court constituted fundamental error—error so egregious that the entire proceeding was undermined—and was therefore available in postconviction proceedings despite waiver. There are several problems with this analysis. The principal case cited by the Court of Appeals for finding fundamental error is *Whittle v. State*, 542 N.E.2d 981 (Ind.1989), *overruled on other grounds by Scisney v. State*, 701 N.E.2d 847 (Ind. 1998). *Whittle* held that the defendant's claim of inadequate inquiry by the trial court into the propriety of joint representation was waived on direct appeal because there was no objection to the joint representation raised by any party at trial. 542 N.E.2d at 985. *Whittle* did not find fundamental error. Rather that decision went

on to address the merits of the ineffective assistance claim that was based on the joint representation. In so doing, the decision cited and applied *Strickland* and *Cuyler* as well as cases from this Court announcing the same standards. That claim was not held to have been waived. Rather, it was rejected because Whittle failed to show an actual conflict (the defenses were common) or an adverse effect. 542 N.E.2d at 986–87.

 Fundamental error is "permitted to preserve certain egregious claims of error even if they were not objected to or were available but not raised on appeal." *Baird v. State,* 688 N.E.2d 911, 916 (Ind. 1997). Ordinarily, however, fundamental error analysis has no application in postconviction proceedings. An ineffective assistance of counsel claim is permitted in postconviction proceedings for the reasons explored in *Woods v. State,* 701 N.E.2d 1208 (Ind.1998). The flaw the Court of Appeals identified in Latta's conviction is at bottom ineffective assistance of counsel based on impaired counsel arising from joint representation. Latta consented to the joint representation. The issue as to that claim is whether that consent waived any claim of ineffective assistance. If it did, Latta cannot complain on appeal or in postconviction about the consequences of her election to proceed with joint counsel. If the waiver was defective, she has her claim of ineffective assistance and it is properly asserted in postconviction proceedings. *Cuyler* expressly sets forth the standard to follow where an ineffectiveness claim is based on counsel's conflict of interest. Because it involves balancing the conflicting Sixth Amendment interests, the merits of the claim may depend on the circumstances leading up to the defendant's consent to joint representation, but it has nothing to do with fundamental error.

### III. Latta's Other Claims

Latta raises a number of other matters she contends establish either ineffective assistance or newly discovered evidence. These include failure to offer evidence that there was no insurance on Brad's life after an officer testified that Latta had said there was such a policy. She also points to scientific testimony that she claims establishes that charcoal lighter fluid could not have been a cause of the fire. These and other matters can be addressed on retrial. Some of these seem plausible, but we need not address them in view of our holding that ineffective assistance is supported by the events described in Part I.

### Conclusion

We reverse the denial of postconviction relief and remand for a new trial.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.