Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2014, 10:05 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT KING**
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONNIE ERVIN MAJOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1307-PC-288 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
The Honorable Natalie Bokota, Magistrate
Cause No. 45G03-1206-PC-10

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Ronnie Ervin Major was involved in a fight with Ant-won Fortier, in which Fortier sustained four gunshot wounds. Major was charged with class A felony attempted murder, class B felony aggravated battery, and class C felony battery. His first trial ended in a mistrial. After his second trial, a jury acquitted him of attempted murder and aggravated battery and found him guilty of class C felony battery. Major's conviction was affirmed on direct appeal.

Major filed a petition for postconviction relief ("PCR"), asserting that (1) his trial counsel was ineffective in failing to move to dismiss the charges on double jeopardy grounds after the first trial, given that the prosecutor stated prejudicial information in his opening argument that he had not disclosed to Major; (2) his pretrial counsel was ineffective in drafting an agreement ("the Agreement"), in which Fortier agreed to wave all claims against Major in exchange for $20,000; and (3) his trial counsel was ineffective in offering the Agreement into evidence. The postconviction court denied Major's PCR petition, concluding that a motion to dismiss would not have been granted, that the Agreement itself did not prejudice Major, and that the decision to use the Agreement was part of a reasonable trial strategy.

Major appeals, arguing that the postconviction court's judgment is contrary to law. Concluding that Major has failed to persuade us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court, we affirm.

2

**Facts and Procedural History**

We summarized the facts underlying Major's convictions in a memorandum decision on direct appeal as follows:

On October 5, 2008, Ant-won Fortier ("Fortier") returned to Gary from Indianapolis with Jocelyn Blair ("Blair") and a woman Fortier knew as "Sugar-Booty." When they arrived at Blair's house, Sugar-Booty exited Fortier's vehicle and began to walk toward the house. Fortier, who had been driving, and Blair were still sitting in the vehicle when Major arrived. Major parked his car approximately ten to fifteen feet from Fortier's vehicle.

Major, who was Blair's former boyfriend, immediately proceeded to shout obscenities at Blair and punched her while she was seated in Fortier's vehicle. Fortier asked Major to leave because Blair's children had come outside of the house. Major responded with more obscenities and talked about needing his money and his truck.

Fortier again asked Major to leave, and Major continued to curse at Fortier. Major approached Fortier with his fist balled and started swinging toward him. Major and Fortier both threw punches and fought. Major ripped Fortier's shirt and tore off his chain and charm. They continued to fight, but eventually separated. Major continued to yell at Fortier, and Fortier continued to ask Major to leave.

Major walked toward his vehicle and pulled a gun from his back while he was fifteen feet from Fortier. Major then aimed his gun at Fortier. Fortier said, "Oh, you're going to shoot me now?" Tr. at 97. Major walked toward Fortier who stood still. Major tried to hit Fortier with the gun, but Fortier threw up his arm and then heard a shot. Fortier received an injury to his back and three wounds to his neck. He fell to the ground, and Major ran toward Blair.

Major left soon thereafter, and people began shouting that Fortier had been shot. Fortier went to the house, but left to drive himself to the hospital. Blair, who accompanied him, took over driving because Fortier started to bleed profusely during the trip. Fortier was hospitalized for three to four days. He suffered four bullet wounds on his upper shoulder and left neck area.

3

The State charged Major with attempted murder, a Class A felony, aggravated battery as a Class B felony, battery as a Class C felony, and battery as a Class A misdemeanor.

*Major v. State*, No. 45A03-1105-CR-220, slip op. at * 1 (Ind. Ct. App. Dec. 27, 2011).

Before trial, Major was represented by Randy Godshalk. Godshalk drafted the Agreement for Major and Fortier, which provided as follows: it was a full and final release and resolution of the events of October 5, 2008; the parties disputed the true value of Fortier's claim but agreed that Major would pay $20,000 to Fortier and in exchange Fortier would forever waive and give up any and all claims of any type against Major; the substance of the Agreement was confidential, and if Fortier disclosed the substance of the Agreement he would return any monies received to Major; and "the settlement outlined in this agreement shall encompass the resolution of all disputes between the parties whether civil, criminal, or a combination." Petitioner's Ex. 1. Fortier signed the Agreement. Major did not, but he made four payments to Fortier for a total of $16,000.

The State filed a motion to disqualify Godshalk, who was also acting as counsel for Blair. The trial court granted the State's motion. Major retained new counsel, Darnail Lyles, who filed his appearance in September 2009. Godshalk provided Major's file to Lyles, including the Agreement and receipts of Major's payments to Fortier.

Lyles represented Major at his first trial in June 2010. The prosecutor told the jury in his opening statement that two years after the alleged offenses were committed, someone shot at Fortier. Lyles objected that there was no evidence that the shooter was connected to Major. The prosecutor stated that Fortier would testify that the shooter rolled the window

4

down and said this is either "for or from Ronnie." Petitioner's Ex. 3 at 13. Lyles informed the trial court that he knew about the shooting but that the shooter's statement had not been disclosed to him. The prosecutor indicated that he had just learned of the shooter's statement the day before and had failed to inform defense counsel. The trial court told the prosecutor, "then you're at fault. You've blindsided him with this which is highly culpable information. It's very damaging." *Id*. at 14. The prosecutor stated that he would not use the evidence of the subsequent shooting and the shooter's statements. *Id*. The prosecutor explained that he failed to inform defense counsel "not purposely but mistakenly because [he] was busy." *Id*. at 18. He argued that a curative instruction would resolve the matter. *Id*. Major moved for mistrial, which the trial court granted.

A second trial was held, at which Major continued to be represented by Lyles. Lyles's defense strategy was to persuade the jury that the shooting was an accident. Tr. at 62. As part of this strategy, Lyles introduced the Agreement to impeach Fortier's credibility regarding the intentional nature of Major's actions. *Id*. at 62, 66. Lyles believed that victims seeking redress for a criminal act are not usually siphoning off money from the defendant, and he wanted to show that Fortier was an opportunist who had financial motivation to proceed against Major. *Id*. at 62, 66, 118. In addition, Major testified.

The jury acquitted Major of class A felony attempted murder and class B felony aggravated battery but found him guilty of class C felony battery. The trial court sentenced Major to a term of six years, with two years executed. Major appealed his conviction, and we affirmed.

5

Major filed a PCR petition, arguing that Godshalk provided ineffective assistance in drafting the Agreement by failing to include a statement that Major was not admitting to liability and that Lyles provided ineffective assistance by failing to move to dismiss the charges against him after his motion for mistrial was granted and by offering the Agreement into evidence. A hearing was held, at which Godshalk and Lyles testified. Subsequently, the State and Major submitted proposed findings of fact and conclusions of law.

The postconviction court issued findings of fact and conclusions of law, concluding that Lyles provided effective assistance and denying Major postconviction relief. Specifically, the postconviction court concluded that the State had not intentionally withheld evidence with the intent to force a mistrial, and therefore a motion to dismiss would not have been granted. The postconviction court also concluded that Lyles's decision to use the Agreement was part of his trial strategy to undermine Fortier's credibility by showing that he was not a victim, but an opportunist trying to siphon funds from Major, and therefore Lyles's performance did not fall below prevailing professional norms.

Major filed a motion to correct error, in which he asserted that he had not abandoned his claim that Godshalk provided ineffective assistance because (1) he raised the claim in his petition; (2) in his proposed findings of fact, he stated that because Godshalk prepared the Agreement without a statement that Major was not admitting liability, the Agreement constituted an admission of wrongdoing; and (3) in his proposed conclusions of law, he stated that he was prejudiced by the Agreement when Lyles admitted it into evidence. The postconviction court denied Major's motion to correct error, stating that Major failed to

6

address how Godshalk's actions constituted ineffective assistance; even if the claim concerning Godshalk were not abandoned, the court would find that Major failed to establish that Godshalk provided ineffective assistance; Godshalk did not represent Major at trial; the Agreement in and of itself did not prejudice Major; and it was only Lyles's decision to introduce the agreement into evidence that arguably could have prejudiced Major. Appellant's App. at 48.

## Discussion and Decision

### Standard of Review

Major appeals the denial of his PCR petition.

> Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence. We review factual findings of a post-conviction court under a clearly erroneous standard but do not defer to any legal conclusions. We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. Additionally, the PCR court here entered findings of fact and conclusions thereon, as required by Indiana Post-Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support the judgment.

*Woodson v. State*, 961 N.E.2d 1035, 1040-41 (Ind. Ct. App. 2012) (citations and quotation marks omitted), *trans. denied*.

> A petitioner who has been denied post-conviction relief … appeals from a negative judgment. … When a petitioner appeals from a negative judgment, he or she must convince the appeals court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. Stated slightly differently, this Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without

7

conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion.

*Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (citations and quotation marks omitted).

Major contends that he is entitled to postconviction relief because he was denied effective assistance of counsel. "The Sixth Amendment to the United States Constitution guarantees the defendant the right to effective assistance of counsel." *Latta v. State*, 743 N.E.2d 1121, 1125 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "'The purpose of the effective assistance guarantee of the Sixth Amendment is simply to ensure that criminal defendants receive a fair trial.'" *Wilkes v. State*, 984 N.E.2d 1236, 1245 (Ind. 2013) (quoting *Strickland*, 466 U.S. at 689).

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland*, 466 U.S. at 687). To establish deficient performance, a petitioner must demonstrate that counsel's representation "'fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment.'" *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007) (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). In assessing whether counsel's performance was deficient, we observe that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). To establish

8

prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Latta*, 743 N.E.2d at 1125. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

### Section 1 – Motion to Dismiss

Major claims that Lyles was ineffective in failing to move to dismiss the charges after his motion for mistrial was granted due to the State's failure to disclose prejudicial evidence. To prevail on a claim of ineffective assistance due to the failure to file a motion, "the defendant must show a reasonable probability that the motion to dismiss would have been granted if made." *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013). Major argues that a motion to dismiss would have been granted based on the constitutional and statutory provisions against double jeopardy:[1]

> If a defendant moves for a mistrial, the defendant forfeits the right to raise a double jeopardy claim in subsequent proceedings, unless the motion for mistrial was necessitated by governmental conduct *intended to goad the defendant into moving for a mistrial*. … [T]he key inquiry on appeal concerns the *subjective intent* of the prosecuting authority. [T]o determine whether a second trial is barred after a defendant's motion for a mistrial, we must examine whether the prosecutor brought about the mistrial *with the intent to cause termination of the trial*. If the State acted *with intent to force the*

---

[1] The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Also, Indiana Code Section 35-41-4-3 provides in relevant part that a "prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if … the former prosecution was terminated after the jury was impaneled and sworn … unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination." However, if "the prosecuting authority brought about [the motion to dismiss] with intent to cause termination of the trial, another prosecution is barred." *Id*.

*defendant into moving for a mistrial*, the prohibition against double jeopardy bars a second prosecution.

*Wilson v. State*, 697 N.E.2d 466, 472 (Ind. 1998) (citations and quotation marks omitted) (emphases added).

Major asserts that the prosecutor's conduct brought about the mistrial and that he acted with the intent to force Major into moving for a mistrial. We agree that the prosecutor's conduct caused the mistrial and therefore turn to the question of his intent. The postconviction court found that there was *no evidence* that the prosecutor acted with the intent to terminate the trial and that the evidence indicated that the prosecutor's failure to disclose the information about the second shooter's statement was a mistake.

Major asserts that the prosecutor clearly knew that he did not disclose the shooter's statement to Major and still included it in his opening remarks knowing that it would result in a mistrial. But the latter assertion is not evidence of whether the prosecutor intended to force Major to move for a mistrial, it is merely a bald assertion. Major then contends that the trial court must have believed that the prosecutor intended to goad Major to move for a mistrial based on its statement to the prosecutor: "[T]hen you're at fault. You've blindsided him with this which is highly culpable information. It's very damaging." Petitioner's Ex. 3 at 14. Although the trial court's statement is evidence that the prosecutor's conduct necessitated the mistrial, which we have already acknowledged, we cannot agree that it is evidence of the prosecutor's subjective intent. We observe that the record reveals that the prosecutor told the trial court that he had learned of the information only the day before and that his failure to inform defense counsel was a mistake. He also told the trial court that he would not pursue

10

the matter and argued in favor of a curative instruction. Accordingly, Major has failed to persuade us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court.

**Section 2 – The Drafting of the Agreement**

Major contends that Godshalk provided ineffective assistance by failing to draft the Agreement to include a statement that Major was not admitting to liability. The postconviction court concluded that Godshalk did not represent Major at trial, the Agreement in and of itself did not prejudice Major, and it was only Lyles's decision to introduce the Agreement into evidence that arguably could have prejudiced Major.

Major contends that he was prejudiced by the Agreement because he paid Fortier $16,000. However, we fail to see, and he does not explain, how his payment to Fortier is relevant to his claim that Godshalk provided ineffective assistance in failing to draft the Agreement to include a statement that Major was not admitting to liability. Major also argues that he was prejudiced because he was led to believe that the Agreement would prohibit Fortier from pursuing criminal charges. Appellant's Br. at 10; Appellant's Reply Br. at 3-4. This argument is unsupported by the evidence, which shows that Godshalk told Major that only the prosecutor's office could decide whether to proceed with criminal charges. Tr. at 19. Finally, Major baldly asserts that that he was prejudiced by the Agreement because it constituted an admission of guilt. None of these assertions addresses the postconviction court's conclusion that *with respect to the criminal proceedings against Major*, it was only

11

Lyles's decision to introduce the Agreement into evidence that arguably could have prejudiced Major.

We observe that the Agreement was between Major and Fortier. The State was not a party to the Agreement. Godshalk testified that the purpose of the Agreement was to settle any civil claims that Fortier might have against Major and, in the event that Major was convicted of crimes against Fortier, to limit any criminal restitution that Fortier might seek. *Id*. at 16-17. Godshalk also testified that the purpose of the Agreement was not to interfere with the criminal prosecution. *Id*. at 39. Further, by its own terms the Agreement was to be kept confidential. Major has failed to persuade us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court.

### Section 3 – Offering the Agreement

Lastly, Major asserts that Lyles provided ineffective assistance by offering the Agreement into evidence.[2] The postconviction court found that Lyles had a specific reason for admitting the Agreement, which was to undermine Fortier's credibility by showing that he was not really a victim, but an opportunist trying to siphon funds from Major. It

---

[2] We observe that Major has not provided us with the entire trial transcript, but only the part of the transcript relating to the motion to dismiss. The record also does not contain the charging informations or any other information that would indicate whether Major was charged with class C felony battery because he used a deadly weapon or because he caused serious bodily injury. "On appeal from the denial of a petition for post-conviction relief, the burden is on the petitioner to provide a record adequate for review." *Lile v. State*, 671 N.E.2d 1190, 1193 (Ind. Ct. App. 1996). "Failure to do so has been found to be grounds for waiver of any alleged error based upon the absent material." *Cox v. State*, 475 N.E.2d 664, 667 (Ind. 1985) (stating that criminal defendant has duty to provide proper record to facilitate intelligent appellate review of issues). We decline to find Major's argument waived, but his failure to include the portions of the transcript relevant to his argument has impeded our review.

concluded that Lyles's decision to use the Agreement was clearly a trial strategy and did not fall below prevailing professional norms.

Major argues that the Agreement clearly indicated that he admitted wrongdoing, so there could not possibly be any rational trial strategy to offer the document. Major argues that Godshalk and Lyles both testified that the Agreement constituted an admission of wrongdoing. This is an overstatement. The record shows that they both testified that it *could* be construed as an admission of wrongdoing. Lyles testified that he did not think that the jurors would necessarily construe the Agreement as an admission because they were not lawyers. Lyles also testified that the defense position was that the shooting was an accident. Lyles's strategy was to use the Agreement to impeach Fortier's credibility regarding the intentional nature of Major's actions because victims seeking redress for a criminal act are not usually siphoning off money from the defendant. "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). We conclude that Lyles introduced the Agreement as part of a trial strategy and that his representation did not fall below prevailing professional norms. Major has failed to persuade us that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court. For the reasons stated above, we affirm the denial of Major's PCR petition.

Affirmed.

BAKER, J., and NAJAM, J., concur.