**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 18 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LARRY PAGE, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )    No. 48A05-1311-PC-556 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Angela Warner Sims, Judge
Cause No. 48C01-0910-PC-553

**June 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Larry Page was convicted of rape, criminal deviate conduct, and criminal confinement. On direct appeal, his appellate counsel argued that Page's trial counsel provided ineffective assistance by failing to timely file a notice of insanity defense. We concluded that trial counsel did not provide ineffective assistance because he had a sound, reasonable defense strategy and the record was silent as to why he did not file a notice of insanity defense.

Page filed a petition for postconviction relief ("PCR"), asserting that his appellate counsel provided ineffective assistance by raising the issue of ineffective assistance of trial counsel on direct appeal without the benefit of an evidentiary hearing. The postconviction court denied Page's petition. Page appeals, arguing that the postconviction court's conclusion that his appellate counsel did not provide ineffective assistance is contrary to law. We conclude that appellate counsel's decision to raise the issue of ineffective assistance of trial counsel was objectively reasonable and that there was no evidence presented at the postconviction hearing that would have had a reasonable probability of changing our decision on direct appeal. Therefore, we affirm.

**Facts and Procedural History**

Beginning in 1976, Page had been in and out of mental health facilities and diagnosed with paranoid schizophrenia. Trial R. at 35, 681, 686-87, 689, 693-94, 696, 709-12, 721, 723. He had a history of failing to take his medication and becoming actively psychotic. *Id.* at 683, 691-94, 722. His I.Q. test results ranged from 60 to 72. *Id.* at 702, 706, 708. In

2

1995, he was convicted of sexual battery. In September 1997, an assessment from the Center for Mental Health included the following opinion of Dr. Don Albaugh: "[Page] will likely re-offend and is unable to distinguish rape from consensual sex and … he should remain in the state hospital." *Id.* at 678.

In 1998, Page committed the offenses underlying this postconviction appeal, which were summarized on direct appeal as follows:

> P.N. set off on foot from her boyfriend's apartment in the early-morning hours of May 29, 1998. As she was walking towards a convenience store, she was approached by Page who asked her for a cigarette. He walked behind her for a while, eventually grabbing her and walking her to his apartment a short distance away. Inside the apartment, Page undressed P.N. while holding her down on the floor. Page inserted his fingers into P.N.'s vagina before forcing her to have sexual intercourse.

> Afterwards, Page led P.N. from the apartment and walked her back to the convenience store. P.N. finally evaded Page and ran across the street to an auto repair shop for help.

*Page v. State*, No. 48A05-0003-CR-94, slip op. at 2 (Ind. Ct. App. Mar. 16, 2001) ("*Page I*"). The State charged Page with class B felony rape, class B felony criminal deviate conduct, and class D felony criminal confinement and alleged that he was a habitual offender.

On August 31, 1998, Page filed a petition for psychiatric evaluation to determine whether the conduct for which he was accused was caused by a mental disease or defect. The trial court granted the petition and appointed Dr. Susan M. Anderson and Dr. Gary L. Crawley to examine Page. Trial R. at 12. Dr. Anderson concluded that Page appeared to have a psychiatric disorder such as schizophrenia or bipolar disorder but she was unable to give an opinion about his mental state at the time of the alleged crimes because he was

3

unwilling to discuss the charges. She also concluded that Page was competent to stand trial. Dr. Crawley reported that Page appeared to suffer from chronic psychosis. *Id*. at 35. He concluded that Page understood the basics of right and wrong but "does not see how his behaviors result in any type of criminal offense." *Id*. He also concluded that Page was not competent to stand trial. Following a hearing, on December 11, 1998, the trial court found that Page was incompetent to stand trial and committed him to the Department of Mental Health. On June 4, 1999, the department notified the trial court that Page was competent to stand trial.

On June 21, 1999, Page filed a petition for a psychiatric examination to determine whether he was legally sane at the time of the alleged offenses, which the trial court denied as untimely. *Id*. at 57. A jury trial was held from June 22 through 30, 1999. Page was medicated, and his trial counsel described him as "more zombie like than ever." *Id*. at 359. Trial counsel pursued a strategy designed to show that Page and P.N. engaged in consensual sexual intercourse. This trial ended in a mistrial because the jury was unable to reach a unanimous verdict, and a new trial was set.

On July 14, 1999, the trial court ruled that Page had until July 28, 1999, to file a notice of intent to assert an insanity defense. Trial counsel did not file a notice. From October 12 through 20, 1999, a second jury trial was held. During voir dire, Page made unsolicited, inappropriate statements and wore multiple pairs of socks. The following morning, trial counsel moved for mistrial based on Page's conduct and mental state. *Id*. at 71, 363-64. The trial court stated,

> [W]e have had a long standing dance, for lack of a better term, dancing around Mr. Page's mental state, whatever it may be. And it was … it was repeatedly, repeatedly, repeatedly, over and over and over and over again that he has a mental disease or defect. So when we got our hung jury we gave you a window to request that and it was never done. I see all of this as trial strategy. If that is what you want, you were entitled to it. But you elected to not do it.

*Id*. at 365-66. Page's counsel requested that Page "be examined to see if he is able to assist in his defense and to see if he is at this time … if he has a mental disease or defect." *Id*. at 374. The trial court responded,

> Now you know fully well we talked about that issue ad nauseam and you lost your window of opportunity when you didn't file your pleading. That is a defense you have to assert. And that was your big trump card. And you complained bitterly in the last trial. … And then when we had the mistrial, okay you got fourteen (14) days, file the thing. And you didn't do it. I take it that is trial strategy. I don't know what it is.

*Id*. at 374-75. The trial court conducted a competency examination and determined that Page was competent.

As the trial progressed, Page continued to make outbursts. Trial counsel stated, "[W]e are alleging mental disease or defect at this time and we would as[k] that the Court have him examined for that reason." *Id*. at 563. The trial court told trial counsel that alleging mental disease or defect had to be done before the omnibus date. Trial counsel replied, "I would hope that the statute leave[s] room for good cause and I think there is good cause to examine him." *Id*. The trial court responded,

> There cannot possibly be good cause … because [the prosecutor] and I both brought it to your attention in exquisite detail that it had to be done during this omnibus window period after the mistrial. So I granted you a brand new omnibus date and give [sic] you the opportunity to do it and for whatever reason, and for which is none of my business, it was not done.

5

*Id*. at 564. Trial counsel stated that he had not had sufficient contact with Page to make that determination. *Id*. The trial court then discussed the difference between mental disease or defect and competency to stand trial. *Id*. Trial counsel stated, "Our defense is that there was consensual intercourse." *Id*. at 565.

In his opening argument, trial counsel told the jury that the evidence would show that any sexual contact between Page and P.N. was consensual. *Id*. at 471. In cross-examining P.N., trial counsel tried to show that she was not going to her mother's as she claimed, that she had seen Page before, and she did not attempt to run away from Page or scream before she entered his apartment. *Id*. at 531, 535-36, 583-84. Trial counsel presented testimony of a neighbor who had seen Page and P.N. walking around together four or five times. *Id*. at 936-37. In his final argument, trial counsel argued that the evidence showed that P.N. consented to sexual intercourse with Page. *Id*. at 966-81. The jury found Page guilty as charged. The trial court imposed an aggregate sentence of fifty years.

Page appealed his convictions and sentence. Page's appellate counsel argued, among other things, that trial counsel provided ineffective assistance by failing to timely file a notice of defense of mental defect or disease. We rejected his argument:

> The record reflects that Page's trial counsel was fully informed by the trial court of the date by which he was to file the defense if he wished to assert it. Although trial counsel took nearly every opportunity outside of the jury's presence to request a psychological evaluation or a mistrial due to Page's mental health status, he remained silent as to why he did not file the defense during the appropriate time. Moreover, trial counsel had a clear and logical trial strategy throughout the jury trial with regard to Page's defense. From the opening statement, the defense strategy was to convince the jury that the incident was not rape, but consensual sex. This strategy has a sound,

6

reasonable basis, and was carefully designed to undermine the credibility of P.N.'s story.

*Page I*, slip op. at 4. We affirmed Page's convictions and sentence.

Page filed a PCR petition, asserting that his appellate counsel provided ineffective assistance by raising a claim of ineffective assistance of trial counsel on direct appeal without the benefit of a postconviction hearing. Page asserted that a postconviction hearing would have produced evidence showing that his trial counsel was not permitted to raise an insanity defense at trial because he failed to timely file notice of the defense. At the postconviction hearing, Page's appellate counsel testified as follows:

> [W]hen I first started doing criminal appeals it was common for us to raise ineffective assistance of [trial] counsel …, if we felt like the record supported the claim. And then the [Indiana] Supreme Court came out with [*Woods v. State*, 701 N.E.2d 1208 (Ind. 1998)] and I know it was not my practice that, from that point forward in fact this is the only case I ever raised it again after that decision and if I recollect that decision, the rational[e] was the PCR proceeding is a better forum to raise that type of claim because you can develop factual issues that you may not be able to develop on direct appeal. I raised it in this case … however because I felt like the record supported it, I thought it was a clear strong claim to make. I thought there was enough in the record to make the claim. So I raised it.

PCR Tr. at 10-11. Page's appellate counsel also testified that he generally made it his practice to speak with trial counsel, but he did not specifically remember speaking to trial counsel in this case. *Id.* at 12.

Page's trial counsel also testified. When he was asked whether he had wanted to pursue an insanity defense during the second trial, he answered, "Absolutely," but the trial court would not allow it. *Id.* at 18. Trial counsel was also asked whether he believed that his defense strategy of consensual sex was not a strong defense, and he responded, "At the point

7

… that was the only defense if you could not use … insanity, under the circumstances." *Id.*

at 23. The postconviction court denied Page's PCR petition and issued findings of fact and

conclusions of law, which provided in relevant part,

> 12. There was little new evidence presented at the post-conviction hearing. The only major addition was trial counsel's testimony about his defense strategy. However, before soliciting the testimony of trial counsel, any appellate counsel would have to be aware that there are two potential outcomes: that the failure to interpose a timely notice either was or was not a trial strategy. It is human nature to rationalize after-the-fact our own deficiencies and inadequacies. Appellate counsel could logically have concluded it better to present the case on its record rather than to run the risk that trial counsel's testimony might ultimately not be helpful to his client's argument.
>
> 13. It was not outside an objective standard of reasonableness for [appellate counsel] to conclude that the appellate court might find the record on its face sufficient to show ineffective assistance of trial counsel. Trial counsel's actions or strategic decisions were arguably outside the bounds of the professional norm since, notwithstanding his client having a long-standing history or serious mental health issues and even having been found incompetent to stand trial in this matter for a period of several months, trial counsel failed, not once but twice, to timely file a notice to interpose a defense of mental disease or defect.

Appellant's App. at 87-88.

**Discussion and Decision**

Page appeals the denial of his PCR petition.

> Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence. We review factual findings of a post-conviction court under a clearly erroneous standard but do not defer to any legal conclusions. We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. Additionally, the PCR court here entered findings of fact and conclusions

8

thereon, as required by Indiana Post-Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support the judgment.

*Woodson v. State*, 961 N.E.2d 1035, 1040-41 (Ind. Ct. App. 2012) (citations and quotation marks omitted), *trans. denied*.

> A petitioner who has been denied post-conviction relief … appeals from a negative judgment. … When a petitioner appeals from a negative judgment, he or she must convince the appeals court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. Stated slightly differently, this Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion.

*Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (citations and quotation marks omitted), *cert. denied* (2002).

Page contends that his appellate counsel provided ineffective assistance by failing to adequately present the issue of ineffective assistance of trial counsel. We observe that "[t]he Sixth Amendment to the United States Constitution guarantees the defendant the right to effective assistance of counsel." *Latta v. State*, 743 N.E.2d 1121, 1125 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland*, 466 U.S. at 687). To establish deficient performance, a petitioner must demonstrate that counsel's representation "'fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment.'" *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007)

(quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Latta*, 743 N.E.2d at 1125. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Claims of ineffective assistance of appellate counsel fall into three categories: "(1) denying access to an appeal, (2) failing to raise issues, and (3) failing to present issues competently." *Timberlake v. State*, 753 N.E.2d 591, 604 (Ind. 2001). Page's claim falls in the third.

> When the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a [petitioner] faces a compound burden on postconviction. The postconviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. Thus, [the petitioner's] burden before the postconviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel.

*Id.* (citations omitted).

Specifically, Page argues that appellate counsel performed below an objective standard of reasonableness by presenting a claim of ineffective assistance of trial counsel on direct appeal without the benefit of an evidentiary hearing that could have been provided through a *Davis-Hatton* procedure.[1] Page asserts that an evidentiary hearing would have

---

[1] The *Davis-Hatton* procedure permits a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, so that the defendant may pursue a PCR petition in the trial court. *Peaver v. State*, 937 N.E.2d 896, 897 n.1 (Ind. Ct. App. 2010), *trans. denied* (2011).

established that trial counsel raised consensual sexual intercourse as a defense only because the trial court refused to let him untimely raise an insanity defense. To support his argument, Page relies on trial counsel's testimony at the PCR hearing that he wanted to raise an insanity defense but the trial court would not permit it.

Although there may be circumstances in which raising the issue of ineffective assistance of trial counsel on direct appeal without an evidentiary hearing constitutes ineffective assistance of appellate counsel, in this case the postconviction court's conclusion that appellate counsel did not provide ineffective assistance is not contrary to law. The trial record shows that Page had an extensive history of serious mental illness. Trial counsel filed a notice of insanity defense before the first trial, but it was denied as untimely. At the first trial, trial counsel pursued a strategy to show that Page and P.N. engaged in consensual sexual intercourse. That the trial ended in a hung jury suggests that the consent strategy was persuasive. Before the second trial, trial counsel did not file a notice of insanity defense despite being given an opportunity to do so. Nevertheless, during the second trial, trial counsel attempted to raise an insanity defense but the trial court would not permit it. Given Page's history of mental illness and the fact that trial counsel twice missed his opportunity to raise the insanity defense, appellate counsel's decision to raise the issue of ineffective assistance of trial counsel on direct appeal was objectively reasonable.

In concluding on direct appeal that trial counsel did not provide ineffective assistance, this Court reasoned that trial counsel had a sound, reasonable defense strategy and further noted that the record did not reveal why trial counsel did not timely file the notice of insanity

11

defense. That question was not answered at the postconviction hearing. Trial counsel did not testify to, nor was he asked, why he did not file the notice of insanity defense in the designated time. In other words, no evidence was presented as to whether trial counsel intended to file the notice and negligently failed to do so or whether during the designated time he strategically decided not to file the notice or whether there is some other reason that he did not file the notice. Accordingly, Page fails to persuade us that but for appellate counsel's failure to obtain an evidentiary hearing, there was a reasonable probability that we would have concluded that trial counsel provided ineffective assistance. Therefore, we affirm the denial of Page's PCR petition.

Affirmed.

BAKER, J., and BARNES, J., concur.