Thomas C. **HANNA**, Donald C. Vicari, Charles E. Bennett, George G. Gavrilos, Ronald M. Gennarelli and Steven W. Ridgley, Appellants–Defendants,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 45A05–9811–CR–567.

Court of Appeals of Indiana.

Aug. 4, 1999.

Transfer Denied Oct. 15, 1999.

John F. Kautzman, Ruckelshaus, Roland, Kautzman & Hasbrook, Indianapolis, Indiana, Richard F. James, James, James & Manning, Dyer, Indiana, Attorneys for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Thomas Hanna and five co-defendants (collectively, the defendants) appeal a trial court order granting the State's motion to disqualify the counsel jointly retained by the defendants and directing each defendant to secure individual representation. The defendants raise a single issue,[1] which we restate as whether the trial court properly disqualified defense counsel on the ground that the joint representation was inherently in conflict with the oath of counsel, even though each defendant waived, after a hearing before a magistrate and a meeting with an independent attorney, his right to conflict-free counsel.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In June of 1998, a grand jury found probable cause to indict the defendants, all Hammond police officers. Hanna was indicted for criminal recklessness, pointing a firearm, operating a motor vehicle while intoxicated, operating a motor vehicle while intoxicated causing serious bodily injury, obstruction of justice, and official misconduct. The other defendants were indicted for obstruction of justice and/or official misconduct.

Each defendant chose the law firm of Ruckelshaus, Roland, Kautzman and Hasbrook (Ruckelshaus) as lead counsel and the firm of James, James and Manning (James) as local counsel (collectively, defense counsel). The State moved to disqualify defense counsel, stating its concern that the joint representation might impair the State's abili-

ty to pursue agreements with individual defendants in exchange for an individual defendant's cooperation in the State's case against Hanna. The State also asserted defense counsel would be unable to cross-examine their own clients if the clients were to become State's witnesses.

Defense counsel informed each defendant of the potential conflicts, but each defendant chose to keep Ruckelshaus and James as defense counsel. A magistrate explained to each defendant how a conflict of interest could arise and how that conflict might affect each defendant's defense. An attorney not affiliated with defense counsel met with each defendant to determine whether each defendant's waiver was knowing and intelligent. It was stipulated that the attorney would testify that each defendant had made a knowing, intelligent, and voluntary waiver of any conflict of interest on the part of defense counsel.

The trial court disqualified defense counsel and issued an order to each defendant to secure individual representation, stating "[t]he joint representation by counsel, despite personal waiver, is inherently in conflict with the oath of counsel." R. at 193–99.

## STANDARD OF REVIEW

The United States Supreme Court addressed the extent of the trial court's discretion to decline to accept a waiver[2] of this nature in *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The Court noted that not only the interest of a criminal defendant but also the institutional

---

1. The defendants argue at some length in their brief that the trial court properly certified this question for interlocutory appeal. The State does not assert on appeal that the certification was error, so we do not address that question.

2. The State asserts at several points in its brief, usually without citation to the record, that the trial court found there were no valid waivers. *E.g.*, "[t]he trial court properly found that Defendant's [sic] waivers of conflict of interest were unknowing and unintelligent[,]" Brief of Appellee at 5; "[t]he trial court found the defendant's [sic] waiver of any conflicts unknowing[,]" *id.* at 4; and "[t]he trial court found ... the waivers could not possibly been [sic] made knowingly and intelligently[.]" *Id.* at 3.

Our review of the record indicates the trial court never made any such finding with regard to the adequacy of the waivers. The transcript of the hearing where the trial court's decision was made indicates the court's concern was attorney conflict of interest and not the quality of the waivers. In fact, the court stated during that hearing: "Oh, the waiver of each understands that they've waived their right, certain rights. See, that's the whole problem with this entire case. You are violating your oath as an attorney with joint representation." R. at 387. Those decisions relied upon by the State which are premised on the absence or inadequacy of waiver are thus inapposite and our analysis will instead focus upon the trial court's discretion to decline to accept a valid waiver.

interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation. *Id.* at 160, 108 S.Ct. 1692. The Court further stated that the trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. *Id.* at 161, 108 S.Ct. 1692. "Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Id.* at 162, 108 S.Ct. 1692.

The federal district courts have similar latitude even when the conflict is only potential:

Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 162–63, 108 S.Ct. 1692.

■ We note at the outset that defense counsel was disqualified in response to the State's motion and not in response to a defense request for substitute counsel. Where it is the government which moves to disqualify defense counsel, the burden is on the government to show that any infringement on the defendant's choice of counsel is justified. *United States v. Diozzi*, 807 F.2d 10, 16 (1st Cir.1986). *Diozzi* cited *Flanagan v. United States*, 465 U.S. 259, 268–69, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), for the proposition that the Sixth Amendment right to counsel of choice reflects a constitutional protection of the defendant's free choice independent of the concern for the objective fairness of the proceedings.

## DISCUSSION AND DECISION

■ We hold that the trial court abused its discretion when it disqualified defense counsel on the State's motion despite the defendants' choice to be jointly represented and despite the waiver of their right to conflict-free counsel, because no actual conflict of interest had arisen and the infringement upon the defendants' choice of counsel was not shown to be justified.

■ With some exceptions not applicable in the case before us, the right to counsel includes the right to counsel of one's choice:

The right to counsel of choice has been described as an "essential component" of the Sixth Amendment right to counsel. . . . The right privately to retain counsel of choice derives from a defendant's right to determine the type of defense he wishes to present. Lawyers are not fungible, and often the most important decision a defendant makes in shaping his defense is the selection of an attorney. In situations where a defendant is able to retain counsel privately "the choice of counsel rests in his hands, not in the hands of the state." In criminal cases, the right to retain counsel

of choice becomes a question of fundamental fairness, the denial of which may rise to a level of constitutional violation.

*Barham v. State,* 641 N.E.2d 79, 82 (Ind.Ct. App.1994) (citations omitted).

■ Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. *Holloway v. Arkansas,* 435 U.S. 475, 482–83, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). We have further recognized that a defendant may waive his right to be represented by counsel who is unencumbered by conflicting interests. *Ward v. State,* 447 N.E.2d 1169, 1171 (Ind. Ct.App.1983), *citing Holloway,* 435 U.S. at 483 n. 5, 98 S.Ct. 1173.

The *Holloway* court recognized that joint representation could benefit the defendant:

> This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."

435 U.S. at 482–83, 98 S.Ct. 1173 (citation omitted).

■ The defendants note that they might be prejudiced by the removal of their chosen counsel. Having the defense speak with a single voice may reduce the ability of the prosecution to play the different defendants off against each other, *Bush v. United States,* 765 F.2d 683, 685 (7th Cir.1985); the exercise of that ability indeed seems to be an important part of the State's strategy here. The prosecutor told the trial court that "[i]t is, in fact, our intention to propose to one or more of the defendants a plea agreement in exchange for testimony on behalf of the state." R. at 372. A trial court dealing with the joint representation question should take into consideration the possibility that the government might seek to "manufacture" a conflict in order to prevent a defendant from having

a particularly able defense counsel at his side. *Wheat,* 486 U.S. at 163, 108 S.Ct. 1692.

Our decisions have not addressed the extent of the right to conflict-free counsel in the context of a defendant's waiver of that right and request for joint representation. However, in *Alcocer v. Superior Court,* 206 Cal.App.3d 951, 254 Cal.Rptr. 72 (1989), those principles were applied to a situation very similar to the one before us. There, the trial court recused Alcocer's lawyer over Alcocer's protest and in spite of his waiver because a potential conflict of interest arose from the lawyer's representation of a potential prosecution witness.

The *Alcocer* court, relying in large part on *Wheat* and *Holloway,* decided the defendant's right to counsel of his choice should not be subordinated to his right to a conflict-free attorney:

> Such a paternalistic treatment of a defendant restricts his Sixth Amendment rights. The choice is up to defendant, provided he is fully informed of his rights, and knowingly and intelligently waives them.... A court abridges a defendant's right to counsel when it removes retained defense counsel in the face of a defendant's willingness to make an informed and intelligent waiver of his right to be represented by conflict-free counsel.

*Id.* at 74–75. In light of what appears to be an informed and intelligent waiver of the right to conflict-free counsel by the defendants in the case before us, we share the view of the *Alcocer* court that a defendant's right to the counsel of his choice should prevail over his or her right to conflict-free counsel.

■ The State correctly notes that the trial court has an interest in assuring a fair trial despite a defendant's waiver of the right to conflict-free counsel and thus has some discretion to decline to accept a defendant's waiver. As stated in *Wheat,* a trial court may undoubtedly decline a waiver where it "justifiably finds an *actual* conflict of interest." 486 U.S. at 162, 108 S.Ct. 1692 (emphasis supplied). The State asserts, without citation to the record, that "the trial court found an *actual* conflict of interest that could not be cured by waiver[,]" Brief of Appellee

at 7 (emphasis supplied), and later refers to the "indisputable conflict of interest." *Id.* at 11. The State then argues that the conflict cannot be waived, basing that argument largely upon decisions where an actual conflict had been found.

We believe no actual conflict had arisen when this interlocutory appeal was brought before us. The trial of the defendants had not yet commenced, and the State does not direct us to any references in the record to actual conflicts of interest which had arisen pretrial. The exchange upon which the State seems to rely as demonstrating an actual conflict involved only a hypothetical situation presented by the judge to counsel addressing the ethical concerns that might arise if one defendant decided to agree to testify for the State in exchange for dismissal of all charges. The record does not reflect that any such agreement had actually been entered into with, or even offered to, any witness. The trial court's order did state that "[t]he joint representation by counsel ... is inherently in conflict with the oath of counsel," R. at 193–99, but it did not specify that the "inherent" conflict was actual rather than potential.

Thus, we find no support in the record for the State's assertion that there was an "actual" conflict of interest. Our analysis is therefore limited to the question whether the trial court properly disqualified defense counsel in light of the conflict of interest that could potentially arise [3] if one or more of the jointly-represented defendants later decided to testify for the State in exchange for dismissal or reduction of charges.

In its order disqualifying defense counsel, the trial court characterized this potential conflict as a "conflict with the oath of counsel." *Id.* at 193–99. At the disqualification hearing, the judge expressed to counsel his concern that "[a]ttorney-client privilege might prevent their attorneys from communicating information that they gather from one defendant to the other. That violates your sworn duty." *Id.* at 387. The judge later pointed out to counsel that "[y]ou're abso-

lutely required to pass on any information that you come into contact with with your client, whoever that might be, whether there's a conflict with another client or not.... How are we going to find out what you withhold from one client and how are we going to find out when it does happen? Because you're agreeing in advance you've violated your oath as a lawyer." *Id.* at 390.

■ The State notes that courts have an independent interest in insuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. The State cites as the source of defense counsel's inherent conflict of interest Ind. Professional Conduct Rule 1.7, which generally prohibits representation of a client if such representation will be directly adverse to another client, *id.* § (a), or if the representation will be materially limited by the lawyer's responsibilities to another client, *id.* § (b).

■ However, under neither provision is joint representation necessarily a violation of the rule. To the contrary, both provisions of that rule expressly permit such representation *if the client consents after consultation* and if the lawyer reasonably believes there will be no adverse affect on the representation itself or on the relationship with the other client. So, the rule by its own terms recognizes the availability to the client of an informed waiver even in light of a conflict which is more than "potential." *See id.* cmt.:

> A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

Because our Professional Conduct Rules explicitly contemplate that a client may proper-

---

3. The State's argument on this issue appears to be premised solely on the existence of an actual conflict and does not address whether the trial court could decline the defendants' waiver in light of a conflict of interest which was only potential.

ly consent to the types of joint representation addressed in Rule 1.7, we decline to interpret that rule to provide that joint representation with such consent necessarily gives rise to an "[inherent] conflict with the oath of counsel." Rule 1.7 thus does not provide a basis for the disqualification of the counsel chosen by these defendants.

It has not been shown that an actual conflict of interest has arisen by virtue of the joint representation of these defendants or that a trial where these defendants are jointly represented by defense counsel could not be "conducted within the ethical standards of the profession" as articulated in Rule 1.7; thus, it has not been demonstrated that this infringement on the defendants' choice of counsel is justified.

## CONCLUSION

The trial court abused its discretion in granting the State's motion to disqualify the defendants' chosen counsel, as the defendants had waived their right to conflict-free counsel, no actual conflict of interest had arisen, and the State had not met its burden to justify an infringement on the defendants' choice of counsel. We reverse the grant of the State's motion to disqualify defense counsel.

Reversed.

SULLIVAN and RILEY, JJ., concur.