

FILED

Jul 31 2020, 8:47 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis. T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerry Jones,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | July 31, 2020<br><br>Court of Appeals Case No.<br>19A-PC-3051<br><br>Appeal from the Dearborn Circuit<br>Court<br><br>The Honorable James D.<br>Humphrey, Judge<br><br>Trial Court Cause No.<br>15C01-1712-PC-19 |

**Crone, Judge.**

## Case Summary

[1]     Jerry Jones appeals the denial of his petition for post-conviction relief (PCR),

arguing that the post-conviction court clearly erred in determining that he failed

to demonstrate that his guilty plea counsel provided ineffective assistance. Finding that he either failed to establish or waived the alleged errors, we affirm.

## Facts and Procedural History

Between July 1 and August 20, 2014, Jones, his wife Chauntel, and Anita Smith, with the intent to commit the crime of level 2 felony dealing in (manufacturing) methamphetamine in an amount over ten grams, agreed to commit that crime; and in furtherance of that agreement, Smith provided Jones with lye, cold packs, lithium batteries, and pseudoephedrine, and/or Jones manufactured methamphetamine. On August 20, 2014, Dearborn County Sheriff's Department officers obtained and simultaneously executed search warrants for Smith's residence and Jones's residence. Ex. Vol. at 11-13. At Jones's residence, police found sources and potential sources of pseudoephedrine, lithium, sulfuric acid, organic solvents, hydrochloric acid, ammonium nitrate, and sodium hydroxide, and items used to manufacture methamphetamine including multiple plastic bottles containing white sludge and black flakes, multiple coffee filters with white residue, plastic bags with white residue, and a bowl containing white powder. *Id*. Police also found six firearms. *Id*., Tr. Vol. 2 at 36.

On August 22, 2014, the State charged Jones, Chauntel, and Smith with committing the following crimes between March 2014 and August 20, 2014: Count 1, level 2 felony dealing in (manufacturing) methamphetamine in an amount less than ten grams but more than five grams where an enhancing circumstance applied; Count 2, level 6 felony maintaining a common nuisance;

and Count 3, level 2 felony conspiracy to commit dealing in (manufacturing) methamphetamine, and in furtherance of their agreement Smith provided Jones and Chauntel with lye, instant cold packs, lithium batteries, and pseudoephedrine, which are precursors used to manufacture methamphetamine. Ex. Vol. at 6. Jones was arrested, and at the police station, he waived his rights and gave a videotaped statement, in which he admitted that he had been manufacturing methamphetamine. *Id*. at 13.

[4] Attorney Kevin Moser was retained by family members to represent Jones and Chauntel. Tr. Vol. 2 at 6-7. Prior to entering his appearance in their cases, Moser spoke separately to Jones and Chauntel, who were being held in the detention center following their arrest, to advise them of the "concerns of dual representation" and to make sure that his representation of both would not create "some kind of irreconcilable conflict." *Id*. at 9, 29, 34. Jones and Chauntel both consented to his joint representation and signed a written waiver of any conflict of interest. Jones's written waiver is not in the record before us.[1] *Id*. at 34.

[5] The prosecutor offered Jones a plea agreement, pursuant to which Jones would agree to plead guilty to Count 3, level 2 felony conspiracy to dealing in (manufacturing) methamphetamine, and in exchange the State would dismiss the remaining counts and recommend a sentence of thirty years with ten years

---

[1] At Jones's request, the post-conviction court took judicial notice of the court file from the underlying case, but Jones did not offer the written conflict-of-interest waiver as a separate exhibit.

suspended. Ex. Vol. at 16-17. After reviewing the State's discovery, including Jones's videotaped confession, Moser believed that this was a favorable plea agreement for Jones. Tr. Vol. 2 at 10, 24-25. Moser knew that the prosecutor viewed Jones as the most culpable of the three defendants and would not offer Jones a more lenient agreement. *Id.* at 19. The prosecutor had told Moser that the State would seek consecutive sentences if the case went to trial. *Id.* at 20. In addition, Smith's counsel had informed Moser that Smith was willing to testify against Jones in exchange for a plea deal. *Id.* at 27. Moser believed that Jones would not "do better at trial if he went to trial" and that if he went to trial, "he could potentially get more time." *Id.* at 24. Moser also knew that Jones did not want to testify against his wife and "wanted to protect his wife and get it over with." *Id.* Neither Jones nor his wife "ever suggested even once that they were interested in testifying against the other one. … [T]hey stayed true to each other the entire time." *Id.* at 21-22.

[6] On January 21, 2015, Jones pled guilty pursuant to the plea agreement. At the guilty plea hearing, the trial court noted that Jones filed a written conflict-of-interest waiver on October 28, 2014, and that they had previously discussed a waiver of conflict in the matter. Ex. Vol. at 26-27. The trial court then asked Moser to reiterate the significance of the waiver to Jones, and Moser explained,

> As we discussed earlier, and as we're discussing again today, you have the right to independent counsel at all times. That having me represent both of you throughout this proceeding could present a potential conflict of interest. …. Are you today telling the Judge that you waive any potential conflict of interest in this case pursuant to the waiver that you filed earlier[?]

*Id.* at 27 (repetitions and hyphens omitted). Jones affirmed that he was. *Id.* Jones also testified that he was satisfied with Moser's representation. *Id.* at 28. The State moved to amend Count 3 to allege that Jones committed conspiracy to manufacture methamphetamine in an amount greater than ten grams between July 1 and August 20, 2014, thereby bringing the dates of the criminal conduct under the revised criminal code. *Id.* at 28-29. Jones had no objection, and the trial court granted the State's motion to amend.

[7] On December 7, 2017, Jones, by counsel, filed a petition for post-conviction relief, alleging that his guilty plea counsel provided ineffective assistance by representing both him and his wife, which presented counsel with a conflict of interest; failing to challenge the State's amendment to the charging information, thereby denying Jones the benefit of being sentenced under the allegedly more favorable prior version of the criminal code; and allegedly incorrectly advising him that he could be convicted of both Counts 1 and 3 and receive consecutive sentences for the convictions. Appellant's App. Vol. 2 at 9-11.

[8] On May 14, 2019, the post-conviction court held an evidentiary hearing, at which Jones and Moser testified. The parties filed proposed findings of fact and conclusions of law. On December 16, 2019, the post-conviction issued an order, finding that Jones failed to show by a preponderance of the evidence that he received ineffective assistance of counsel and denying Jones's petition for post-conviction relief. This appeal ensued.

# Discussion and Decision

Jones appeals the denial of his PCR petition. We observe that "[p]ost-conviction proceedings are civil proceedings in which a defendant may present limited collateral challenges to a conviction and sentence." *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019) (citing Ind. Post-Conviction Rule 1(1)(b)), *petition for cert. filed,* (July 6, 2020). "The scope of potential relief is limited to issues unknown at trial or unavailable on direct appeal." *Id.* A defendant who files a petition for post-conviction relief, "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). Because the defendant is appealing from the denial of post-conviction relief, he is appealing from a negative judgment:

> Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is no way within the law that the court below could have reached the decision it did. We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law.

*Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citations and quotation marks omitted). We will not reweigh the evidence or judge the credibility of witnesses and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014).

Jones maintains that he is entitled to post-conviction relief because he was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he right to counsel is the right to effective assistance of counsel.") (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). When considering a claim of ineffective assistance of counsel, we strongly presume "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018), *cert. denied* (2019). A defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007).

We evaluate an ineffective assistance of counsel claim with the two-part test articulated in *Strickland*, 466 U.S. 668. *Humphrey*, 73 N.E.3d at 682. First, "'the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment.'" *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). Second, the defendant must show prejudice. *Id.* In the context of a guilty plea, the prejudice prong of the *Strickland* test focuses on whether counsel's deficient performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To satisfy the prejudice requirement, the petitioner therefore must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Id.* "[T]o prove they would have rejected the guilty

plea and insisted on trial, defendants must show some special circumstances that would have supported that decision. Defendants cannot simply say they would have gone to trial, they must establish rational reasons supporting why they would have made that decision." *Bobadilla v. State*, 117 N.E.3d 1272, 1284 (Ind. 2019).

## Section 1 - Jones has failed to carry his burden to show that joint representation resulted in an actual conflict of interest that adversely affected counsel's performance.

[12] Jones first argues that he received ineffective assistance because his guilty plea counsel had an actual conflict of interest arising from his joint representation of Jones and his wife that adversely impacted his representation of Jones. The Sixth Amendment right to counsel includes the right to representation by an attorney who does not owe conflicting duties to other defendants. *Williams v. State*, 529 N.E.2d 1313, 1315 (Ind. Ct. App. 1988) (citing *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)). However, joint representation of codefendants is not a per se violation of the constitutional guarantee of effective assistance of counsel. *Id.* (citing *Holloway*, 435 U.S. at 482). As this Court has previously observed, the United States Supreme Court explained the reason for this rule as follows:

> This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: "Joint representation is a means of insuring against reciprocal

recrimination. A common defense often gives strength against a common attack."

*T.C.H. v. State*, 714 N.E.2d 1162, 1166 (Ind. Ct. App. 1999) (quoting *Holloway*, 435 U.S. at 482-83), *trans. denied*. "Having the defense speak with a single voice may reduce the ability of the prosecution to play the different defendants off against each other." *Id.*

[13] On the other hand, joint representation may result in a conflict of interest that prevents an attorney from acting in the best interest of one or more of his or her clients:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.... [A] conflict may ... prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Wheat v. United States*, 486 U.S. 153, 160 (1988) (quoting *Holloway*, 435 U.S. at 489-90). Such a conflict of interest may serve as a basis for an ineffective assistance claim. To establish ineffective assistance based on a conflict of interest arising from joint representation, a defendant who did not raise an objection to joint representation "at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Latta v. State*, 743 N.E.2d 1121, 1127 (Ind. 2001) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980)). "[O]nce the defendant has demonstrated an actual conflict and

an adverse effect on his lawyer's performance, the prejudice prong of an ineffective assistance claim is presumed.[2] *Id*. (citing *Strickland*, 466 U.S. at 692).

[14] Although in some cases joint representation may involve a potential for a conflict of interest, the Sixth Amendment's right to effective counsel also encompasses the right to be represented by counsel of one's choice. *Id.* (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).

> The right to counsel of choice has been described as an "essential component" of the Sixth Amendment right to counsel.... The right privately to retain counsel of choice derives from a defendant's right to determine the type of defense he wishes to present. Lawyers are not fungible, and often the most important decision a defendant makes in shaping his defense is the selection of an attorney. In situations where a defendant is able to retain counsel privately "the choice of counsel rests in his hands, not in the hands of the state."

*T.C.H.*, 714 N.E.2d at 1165-66 (quoting *Barham v. State*, 641 N.E.2d 79, 82 (Ind. Ct. App. 1994)). Thus, under some circumstances, a defendant may properly waive his or her right to be represented by counsel who is free from conflicting interests. *Latta*, 743 N.E.2d at 1127 (citing *Ward v. State*, 447 N.E.2d 1169, 1172 (Ind. Ct. App. 1983)).

---

[2] Although counsel may be subject to a conflict of interest from reasons other than joint representation, in *Johnson v. State*, 948 N.E.2d 331 (Ind. 2011), the Indiana Supreme Court observed that the special rules applying to conflict of interest have been applied by the U.S. Supreme Court only "where counsel is conflicted because he or she is actively representing multiple parties with conflicting interests." *Id.* at 334-35.

[15]     Here, before Moser filed his appearances for Jones and his wife, Jones signed a written conflict-of-interest waiver, which he reaffirmed when he pled guilty. The State argues that because Jones waived any potential conflict of interest arising from Moser's joint representation, Jones is precluded from raising an ineffective assistance of counsel claim based on a conflict of interest. The issue is not as settled as the State suggests, as shown by our supreme court's examination of the issue in *Latta*, 743 N.E.2d 1121.

[16]     In that case, Latta and her husband were charged with the murder of their two-year-old son. She and her husband were tried jointly and were represented by the same counsel, whom they had retained. "Midway through the joint trial, the State moved for a mistrial, arguing, among other things, that the testimony of a trooper had given rise to a conflict of interest." *Id*. at 1128. Latta's attorney told the trial court that it was the Lattas' choice for him to represent them. The trial court asked the Lattas whether their attorney had discussed the risks that could be involved in joint representation and whether they wanted him to represent both of them. *Id*. They answered affirmatively to both questions, and the trial court denied the State's motion for mistrial. *Id*.

[17]     Latta was convicted and later petitioned for post-conviction relief on the ground she was denied effective assistance of counsel. One of her ineffective assistance claims was that the joint representation at trial created an actual conflict that adversely affected her defense. Although our supreme court did not decide the merits of Latta's conflict-of-interest claim because it found her trial counsel ineffective on other grounds, the court opted to discuss the issue at length to

provide guidance in future cases. As to the effect of Latta's waiver of her trial attorney's conflict of interest, our supreme court explained,

> Even if we were to conclude that Latta's waiver of [her trial attorney's] conflict was knowing and voluntary, the issue remains whether her initial waiver may serve to waive all future conflicts and any ineffective assistance of counsel claim based on these conflicts. Justice Marshall, concurring and dissenting in *Cuyler*, thought it impossible to waive all potential conflicts, especially where a waiver is obtained in the early stages of trial before it is feasible to contemplate all of the possible conflicts. 446 U.S. at 354 n.1, 100 S. Ct. 1708. But the United States Supreme Court has given us no further clear guidance on this point…. *Wheat* also cited the "institutional interest" in a fair proceeding. Arguably the proper inference from *Wheat* is that this institutional interest justifies overriding the defendant's choice of joint counsel but still permits a waiver to preclude a later claim of ineffective assistance. *Wheat* itself expressly reserved this issue for another day, as it noted, "without passing judgment on, the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." 486 U.S. at 161-62, 108 S. Ct. 1692.

> The post-*Wheat* federal circuit decisions have split on the question of whether a waiver eliminates further claims based on conflict. *Compare United States v. Hall*, 200 F.3d 962, 965-67 (6th Cir. 2000) (reversing conviction on direct appeal because of ineffective assistance of counsel due to conflict of interest even though the trial court had repeatedly warned defendant of conflict, and stating that the defendant's waiver "does not bind the courts"), and *United States v. Swartz*, 975 F.2d 1042, 1049 (4th Cir. 1992) (a waiver obtained pursuant to Federal Rule of Criminal Procedure 44(c), which places a duty on the trial court to inform defendant of potential conflicts where defendant is

jointly represented, "may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings"), with *United States v. Lowry*, 971 F.2d 55, 63-64 (7th Cir. 1992) (any ineffective assistance claim based on conflict of interest is barred where defendant knowingly and voluntarily waives conflict).

*Id*. at 1129.

[18]   The *Latta* court then considered the issue confronting the trial court at Latta's trial, noting that in *Wheat*, the United States Supreme Court held that the trial court should be given wide discretion in determining whether to accept or reject a waiver.[3] *Id*. at 1130 (citing 486 U.S. at 164). The *Latta* court agreed, indicating that "in evaluating whether the actual conflict or serious potential for conflict is sufficient to override the defendant's express choice of counsel[,]" a trial court should make the necessary inquiry to assess "the defendant's apprehension of the dangers of joint representation." *Id*. The supreme court explained that "regardless of the ultimate resolution of the issue left open in *Wheat*, … the presumption of deference to the defendant's choice is

---

[3] One of the reasons that the trial court should be given wide discretion is the court's institutional interest in fair trials. As we explained in *T.C.H.*,

> The [*Wheat*] Court noted that not only the interest of a criminal defendant but also the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation. [486 U.S. at 160]. The [*Wheat*] Court further stated that the trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. *Id*. at 161. "Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Id*. at 162.

714 N.E.2d at 1164-65 (parallel citations omitted).

strengthened by confidence that it is an informed and individual choice by the defendant." *Id.*

[19] As for the post-conviction court's task, the *Latta* court stated:

> The first issue for the post-conviction court was whether, under these circumstances, it was within the trial court's discretion to accept Latta's waiver of conflict-free representation. We think the defendant's waiver should be presumed valid, and the burden in post-conviction proceedings is on the defendant to prove otherwise. If there is evidence supporting the conclusion of an uninformed, or worse, improperly influenced waiver, the post-conviction court must assess the defendant's appreciation of the risks. If knowing and voluntary, the waiver is at least entitled to a very strong presumption of validity, and may be conclusive, because it invokes her right to counsel of her choice. If the waiver does not preclude a subsequent claim of ineffective assistance, there remains the issue, as *Cuyler* put it, of whether "an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler*, 446 U.S. at 348-49, 100 S. Ct. 1708. If so, prejudice under *Strickland* is presumed.

*Id.* at 1131.

[20] *Latta* makes clear that in post-conviction proceedings, there is a presumption that a defendant's waiver of conflict-free representation is valid, and the defendant bears the burden of rebutting that presumption. Here, at Jones's post-conviction hearing, Moser testified that he explained the pitfalls of joint

representation to Jones.[4]  The transcript of Jones's guilty plea hearing shows that Jones affirmed to the trial court that he had been informed that joint representation could present a "potential" conflict of interest, that he was waiving any "potential" conflict of interest pursuant to the waiver he had signed earlier, and that he was satisfied with Moser's representation. Ex. Vol. at 27.

[21]  Assuming, without deciding, that Jones's conflict-of-interest waiver was valid, the issue remains whether that waiver bars Jones from challenging his conviction based on an actual conflict of interest that he alleges existed during discovery and plea negotiations.  We observe that *Latta* was decided in 2001, and the United States Supreme Court has not spoken further on whether a defendant's waiver of conflict-free representation precludes all future claims of ineffective assistance based on a conflict of interest.  The federal cases cited by the State supporting its contention that a defendant's knowing and intelligent waiver of the right to conflict-free representation bars any subsequent challenge to his or her conviction based on a conflict of interest were all decided before *Latta*.[5]  There have not been any Indiana cases decided since *Latta* that have explored the waiver issue any further.

---

[4] Jones notes that he testified at the post-conviction hearing that he did not receive any explanation of the pitfalls of dual representation, but the post-conviction court was not required to credit his testimony.  Jones's argument is merely a request to reweigh the evidence, which we must decline.

[5] The State cites *Lowry*, 971 F.2d at 60, *Gomez v. Ahitow*, 29 F.3d 1128, 1135-36 (7th Cir. 1994), *United States v. Martinez*, 143 F.3d 1266, 1268-69 (9th Cir. 1998), *Henderson v. Smith*, 903 F.2d 534, 536 (8th Cir. 1990), and *Duncan v. Alabama*, 881 F.2d 1013, 1017 n.5 (11th Cir. 1989).  The State also cites three cases from our sister

[22] We are disinclined to issue a blanket holding that a conflict-of-interest waiver precludes all future claims of ineffective assistance based on an actual conflict of interest. Such an absolute bar seems ill-advised given the myriad of situations that joint representation could create a conflict of interest and the various circumstances under which a defendant might waive a conflict of interest. For example, *Latta* and this case present two very different situations. In *Latta*, the prosecutor moved for mistrial, arguing that the testimony of a witness created a conflict of interest. Latta was present to hear the testimony of the witness and the argument of the prosecutor. The trial court itself was aware of the precise conflict of interest and was able to question Latta about her wishes in light of the new development.[6] Here, Jones waived the potential for a conflict of interest at the onset of his criminal proceedings, and his case never went to trial because he pled guilty pursuant to a plea agreement. Although the trial court

---

states but fails to articulate why we should follow them. *See Dunlap v. People*, 173 P.3d 1054, 1070 (Colo. 2007) ("A defendant who validly waives the right to conflict-free counsel cannot later make a claim of ineffective assistance due to a conflict of interest."); *Ryan v. Eighth Judicial Dist. Ct.*, 168 P.3d 703, 710 (Nev. 2007); *State v. Demmerly*, 722 N.W.2d 585, 590 (Wisc. Ct. App. 2006) (holding that when a defendant waives the right to conflict-free counsel, he "necessarily" waives the right to assert that his counsel was ineffective due to the alleged conflict except in rare, egregious circumstances).

[6] We also note the protection afforded defendants in the federal criminal rules, for which there is no Indiana counterpart. Federal Rule of Criminal Procedure 44(c) provides,

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

The trial court's compliance with this rule bolsters an appellate court's confidence that a defendant's waiver of a conflict of interest is valid. For example, in *Lowry*, 971 F.2d 55, one of the cases cited by the State, the Seventh Circuit Court of Appeals noted that the defendant had waived two prior conflicts of interest at two prior hearings; there had been full compliance with Rule 44(c); the defendant clearly understood the dangers of counsel with a conflict, his rights, and his options; and he made a knowing and intelligent waiver; and therefore the defendant had forfeited any claim on that conflict of interest ground. *Id.* at 63-64.

asked him to affirm his waiver at his guilty plea hearing, the trial court would not have been aware of any conflict of interest to the extent that the trial court in *Latta* was. Thus, notwithstanding Jones's waiver of any potential conflict of interest, we opt to examine Jones's claim under the *Cuyler* standard, that is, whether due to his joint representation, his attorney was presented with an actual conflict of interest that adversely affected his performance.[7]

[23] Jones asserts that the "actual conflict in this case arises from Moser's representation of both [himself] and [his wife] on very serious charges arising from the same facts." Appellant's Br. at 15. However, as Jones himself acknowledges, "not every case of dual … representation creates a conflict of interest." *Id.* (quoting *Holleman v. State*, 641 N.E.2d 638, 640 (Ind. Ct. App. 1994)*, trans. denied*). Jones's overbroad assertion begs the question of what specific aspect(s) of this case introduced a conflict of interest into Moser's joint representation. For example, a codefendant's desire to testify against another codefendant would create a conflict of interest. Cf. *T.C.H.*, 714 N.E.2d at 1167 (concluding there was no actual conflict where none of the codefendants conveyed any desire to testify against the other codefendants in exchange for dismissal or reduction of charges). Here, the evidence shows that neither Jones nor Chauntel ever expressed any willingness to testify against each other. Tr. Vol. 2 at 21-22. In fact, it seems that they wanted to present a united front. *Id.*

---

[7] The post-conviction court did not make any findings on this issue.

Further, it was Jones's express wish to protect Chauntel and do what was best for her. *Id*. at 22, 28. Jones contends that Moser's loyalty to Chauntel prevented Moser from arguing to the prosecutor that Jones did not have more culpability than his wife, but that would have been contrary to Jones's express wishes.

[24] Jones also contends that Moser's loyalty to Chauntel kept him from challenging the validity of the search warrant.[8] Given that Jones and Chauntel were married and lived together in the house targeted by the warrant, we fail to see how any challenge to the search warrant would have impacted their interests differently. Thus, any decision not to challenge the search warrant does not appear related to a conflict of interest. Rather, it appears that the decision was based on Moser's knowledge that the prosecutor would not extend favorable plea offers once pretrial litigation commenced. *Id*. at 17. Accordingly, we conclude that Jones has failed to carry his burden to show that Moser's joint representation was burdened by an actual conflict of interest that adversely affected his performance. Jones's claim of ineffective assistance on this basis must fail.

---

[8] We reject Jones unsupported assertion that if Moser "used even basic discovery tools like a deposition, the prosecutor would have withdrawn his offer to Chauntel." Appellant's Br. at 15.

## Section 2 – Jones has failed to carry his burden to show or waived his claims that his attorney provided ineffective assistance by advising him to plead guilty.

[25] Jones next contends that Moser provided ineffective assistance by advising him to plead guilty to level 2 felony conspiracy to commit dealing in methamphetamine under the version of Indiana Code Section 35-48-4-1.1 that became effective July 1, 2014 (new version). Jones argues that he was entitled to be charged under the prior version of Section 35-48-4-1.1 that was in effect until June 30, 2014 (prior version). As initially charged, Jones was alleged to have committed his offenses between March 2014 and August 20, 2014, which included but was not limited to a time period when the prior version of the statute was in effect. Under the new version, dealing in methamphetamine is a level 2 felony if the amount involved was at least ten grams or at least five grams but less than ten grams and an enhancing circumstance applied. Under the prior version, dealing in methamphetamine was a class B felony and was elevated to a class A felony if the amount of the drug involved weighed three grams or more. Jones contends that he would have received a lighter sentence under the prior version.

[26] Jones ignores that the dates alleged in the original charging information also included a time period when the new version was in effect. The amended charging information alleged that his criminal conduct was committed between July 1 and August 20, 2014. Jones was not entitled to be charged and sentenced under the prior version for criminal conduct that he engaged in after

July 1, 2014. Furthermore, Jones's argument that he would have received a lighter sentence under the prior version is without merit because it assumes that the State would have charged him with a class B felony. There is no support for that assumption. The prior version provided that dealing in methamphetamine in an amount greater than three grams was a class A felony, and he was originally charged with dealing more than that. If Jones had been charged with a class A felony, he would have faced a sentence of up to fifty years, as opposed to thirty years for the level 2 felony. *Compare* Ind. Code § 35-50-2-4 (2013) (providing sentencing range of twenty to fifty years for a class A felony) *with* Ind. Code § 35-50-2-4.5 (providing sentencing range of ten to thirty years for a level 2 felony).

[27] Jones also maintains that Moser provided ineffective assistance by advising him to plead guilty to level 2 felony conspiracy to commit dealing in methamphetamine in an amount greater than ten grams because there was insufficient evidence of weight. However, the post-conviction court found that "Jones has not contested whether the State could prove that the agreement was to produce methamphetamine in an amount greater than ten grams." Appealed Order at 4. Post-conviction claims that were not presented to the post-conviction court are not available for appellate review. *Walker v. State*, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006), *trans. denied*; *see also Richardson v. State*, 800 N.E.2d 639, 647 n.4 (Ind. Ct. App. 2003) (holding that petitioner waived claim because it was not presented to post-conviction court), *trans. denied* (2004).

Therefore, Jones has waived his claim that there was insufficient evidence of the weight of the methamphetamine.

[28] Last, in a two-sentence paragraph, Jones argues that Moser told him that the prosecutor was threatening consecutive sentences if Jones did not accept the plea agreement. Jones asserts, "It was not possible for the trial court to impose consecutive sentences because Counts 1 and 3 were alternative theories of the same offense." Appellant's Br. at 19. Because Jones has not supported this argument with cogent reasoning and citations to authorities, this argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Casady v. State*, 934 N.E.2d 1181, 1190 (Ind. Ct. App. 2010) (concluding that defendant waived claim that trial court improperly admitted evidence by failing to cite rules of evidence and case law), *trans. denied* (2011).

[29] Waiver notwithstanding, Jones's argument is meritless. Count 1 alleged the offense of dealing in methamphetamine, and Count 3 alleged the offense of conspiracy to commit dealing in methamphetamine. In his reply brief, Jones argues that the "Indiana Double Jeopardy Clause prohibits a court from entering multiple convictions when there is a reasonable probability the actual evidence used to establish the essential elements of one offense were used for an additional challenged offense." Appellant's Reply Br. at 7-8 (citing *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). He asserts that the allegations in both

counts involved manufacturing methamphetamine over identical date ranges, and that a conviction could not have been entered for both counts.

[30]     As clearly explained in *Coleman v. State*, 952 N.E.2d 377 (Ind. Ct. App. 2011),

> [T]he conspiracy statute, Indiana Code Section 35-41-5-2, … contains elements that must be proven in a conspiracy case, and not in a case for the underlying offense: an agreement with another person with intent to commit a felony, and the commission of an overt act in furtherance of the agreement. …. Double jeopardy rules preclude a conviction for conspiracy and the underlying offense only when the same evidence is used to prove both the overt act committed in furtherance of the conspiracy and the commission of the underlying crime. Otherwise, a defendant may be convicted of both offenses.

*Id.* at 382 (citations omitted). Here, the State alleged that the overt act committed in furtherance of the conspiracy to commit dealing in methamphetamine was that *Smith provided Jones and his wife with lye, cold packs, lithium batteries, and pseudoephedrine* and/or that Jones manufactured methamphetamine. Thus, to convict Jones of the conspiracy offense, the State could have relied on an overt act that was not the commission of the underlying offense, in which case Jones's convictions for both counts would not have violated the prohibition against double jeopardy. Other than double jeopardy, Jones does not allude to any other ground that would preclude the imposition of consecutive sentences. Accordingly, we conclude that Jones has failed to carry his burden to show that Moser provided ineffective assistance by advising

Jones that he could be convicted of both counts and sentenced to consecutive terms.

## Section 3 – Jones has waived his argument that his counsel provided ineffective assistance by failing to file a motion to suppress the search warrant.

[31] Jones also asserts that his counsel provided ineffective assistance by failing to file a motion to suppress the search warrant. The post-conviction court found that Jones did not allege a claim of ineffective assistance for failing to file a motion to suppress in his PCR petition and that he never amended his petition. Appealed Order at 2-3. Jones does not challenge these findings or even acknowledge that he did not raise this allegation in his PCR petition. We conclude that the issue is waived. *See* Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."); *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.").

[32] Based on the foregoing, we affirm the denial of Jones's petition for post-conviction relief.

[33] Affirmed.

Robb, J., and Brown, J., concur.